IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BALLINASMALLA HOLDINGS LIMITED
and CORRIB OIL BIOFUELS, LLC,

                              Petitioners,

           vs.

FCSTONE MERCHANT SERVICES, LLC
and INTL FCSTONE MARKETS, LLC
(f/k/a INTL HANLEY, LLC),

                              Respondents.

Case No. 18-cv-12254

**PETITION TO VACATE ARBITRATION AWARD**

Petitioners, Ballinasmalla Holdings Limited ("BHL") and Corrib Oil Biofuels, LLC ("Corrib Biofuels"), by and through their attorneys, Sallah Astarita & Cox, LLC, hereby petition this Court for an order pursuant to 9 U.S.C. § 10, vacating in its entirety the award issued by the American Arbitration Association on the 30th day of November 2018 in favor of Respondents in the amount of $4,836,393.32 in damages and attorney's fees of $150,000.00, and granting such other and further relief as the Court deems just and proper.

**PARTIES**

1. Petitioner Corrib Biofuels is a New Jersey limited liability company that distributes and manufactures oil and petrol products. At all relevant times, its main office location was in Elizabeth, New Jersey.

2. Petitioner Ballinasmalla Holdings Limited is a company incorporated under the laws of the Republic of Ireland. Its main office location is located in Galway, Ireland.

3. Based upon information and belief, Respondent FCStone Merchant Services, LLC ("FCStone Merchants") is a Delaware limited liability company that trades in a variety of physical commodities including various agricultural oils, animal fats, grains and feed ingredients, coffee, cocoa, cotton and lumber. Its main office location is Kansas City, Missouri.

4. Based upon information and belief, Respondent INTL FCStone Markets, LLC ("INTL FCStone") is an Iowa limited liability company, is a wholly owned subsidiary of INTL FCStone, Inc., and engages in developing and executing over the counter structured pricing products for consumers and producers of agricultural commodities. Its products include seasonal flex price contracts and accumulator contracts. Its main office location is Des Moines, Iowa.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is present pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and the parties are citizens of different states.

6. Further, Respondents have consented to jurisdiction of the Courts of New York by way of the two arbitration agreements at issue in this case. (See, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Lecopulos*, 553 F2d 842, 844 [2d Cir 1977].)

7. This Court represents the proper venue pursuant to 9 U.S.C. § 10 as the award at issue was made within New York, New York.

**FACTUAL AND PROCEDURAL BACKGROUND**

8. The underlying dispute between the parties included an action in New York State Court, and the arbitration at issue. For reasons that will become clear, the two are intertwined and relevant to the matter now before this Court.

<u>The New York State Court Action</u>[1]

9. On June 24, 2016, INTL FCStone filed a motion for summary judgment in lieu of a complaint against Corrib Oil Company, LTD ("Corrib Oil")[2] in New York State Court pursuant to N.Y. C.P.L.R. § 3213.

10. Therein INTL FCStone alleged that Corrib Oil. owed it money resulting from swap transactions made on Corrib Oil's behalf pursuant to an International Swaps Dealer Association (ISDA) agreement.

---

[1] INTL FCStone's state court case will be referred to as the "New York State Court Action."
[2] It is important to note that Corrib Oil was not a party to the arbitration at issue and is a different entity than Corrib Oil Biofuels, LLC.

11. After hearing oral arguments, the New York State Court denied INTL FCStone's motion for summary judgment in lieu of the complaint and ordered that the case proceed with INTL FCStone's memorandum of law serving as the Complaint.

12. As a result of INTL FCStone's intentional fraud throughout the parties' relationship, and its breach of the ISDA agreement, Corrib Oil filed counterclaims for negligence, breach of the ISDA agreement, breach of fiduciary duty, violations of the Commodity Exchange Act, breach of the implied covenant of good faith and fair dealing, common law fraud, and fraud in the inducement.

13. On August 7, 2017, INTL FCStone filed a second motion for summary judgment as to all claims and counterclaims. The matter was fully briefed, the parties appeared at oral argument, and as will be discussed later, the New York State Court eventually issued a Decision and Order granting the motion for summary judgment.

Concurrent Arbitration Claim

14. On the very same day that it filed its New York State Court Action, INTL FCStone, along with FCStone Merchant, filed an arbitration claim with the American Arbitration Association against BHL and Corrib Biofuels.

15. Although filed as a single action, Respondents' arbitration claim amounted to two separate actions. These were two separate claims involving completely separate facts and never should have been filed as one.

Soybean Oil Contract and Guaranty Claim

16. The first distinct dispute, which will be referred to as the "Soybean Oil Contract and Guaranty Claim" was between FCStone Merchant, on one side, and Corrib Biofuels and BHL on the other.

17. The alleged contract at issue involved the physical delivery of crude degummed soybean oil to Corrib Biofuels processing plant, where it would be converted into biodiesel and sold.

18. BHL agreed to act as guarantor in connection with Corrib Biofuels' relationship with FCStone Merchant.

19. A dispute arose over the quality of certain deliveries made by FCStone Merchant. Corrib Biofuels felt that FCStone Merchant failed to deliver what was contracted for and the parties were unable to avoid arbitration.

20. In this portion of the arbitration, FCStone Merchant, alone, was attempting to both establish the debt allegedly owed, and enforce its guaranty with BHL.

21. This claim did not involve INTL FCStone at all. INTL FCStone was not a party to the soybean oil contract or the guaranty with BHL.

ISDA Guaranty Claim

22. The second distinct dispute, which will be referred to as the ISDA Guaranty Claim, was between INTL FCStone and BHL, and was directly dependent on the resolution of the New York State Court Action discussed above.

23. This claim did not involve FCStone Merchant or Corrib Biofuels in any capacity.

24. Specifically, INTL FCStone was seeking to recover money that was allegedly owed by Corrib Oil pursuant the ISDA agreement. The debt allegedly owed under the ISDA Guaranty Claim was the very debt that INTL FCStone was trying to establish in the New York State Court Action.

25. In response to the ISDA Guaranty claim, BHL argued that until such time as there was a final resolution of the New York State Court Action there was no indebtedness to recover pursuant to the guaranty.

26. Neither FCStone Merchant, nor Corrib Biofuels, was a party to the ISDA Guaranty, and neither was involved in the transactions that formed the debt allegedly owed pursuant to same. There was no reason for these two separate actions to be brought together.

<u>INTL FCStone and FCStone Merchant Stay The ISDA Guaranty Claim Portion Of The Arbitration</u>

27. Recognizing the merits of BHL's argument regarding the ISDA Guaranty, on April 26, 2017, INTL FCStone requested that the portion of the AAA arbitration regarding the ISDA Guaranty be stayed until the "NY State Action adjudicates the underlying liability."

28. According to INTL FCStone, "staying the ISDA Guaranty Claim has only virtues for both parties: it streamlines the issues, lowers costs for the parties, reduces duplicitous discovery, and avoids potentially inconsistent judgments."

29. Agreeing with the Claimant that there was no decision to be made under the ISDA Guaranty until the New York State Court Action had reached a final resolution, the Arbitrator issued an order stating that staying the ISDA Guaranty claim until the New York State Court Action was adjudicated.

30. At this point, all parties and the Arbitrator were in agreement that there was no debt upon which to enforce the guaranty until the New York State Action had concluded.

Partial Final Award Regarding The Soybean Contract and Guaranty Claim

31. Following the stay of the ISDA Guaranty Claim, the Soybean Contract and Guaranty portion of the parties' arbitration continued. On November 13 and 14, the parties conducted hearings in connection with the Soybean Contract and Guaranty.

32. On March 9, 2018, the Arbitrator issued a "Partial Final Award." Therein, the Arbitrator ruled in Claimants' favor as to the Soybean Oil Contract with Corrib Biodiesel, and BHL's Soybean Oil Guaranty.

33. During the hearing, Claimants' counsel presented no evidence in connection with their request for payment of $100,000.00 in attorney's fees. No timesheets, fee agreements, sworn statements, or testimony, or any other evidence of

attorney's fees was provided. Put simply, Claimants' counsel made a bare request for $100,000.00 in fees, with nothing to support same.

34. Recognizing the utter failure of Claimants to present any evidence in connection with their request for $100,000.00 in attorney's fees at the hearing, the Arbitrator ordered the Claimants to submit additional briefing regarding this issue. Specifically, the Arbitrator requested that Claimants provide "[a] showing that the $100,000 in attorneys' fees that Claimants seek is 'reasonable.'"

35. Claimants submitted their brief regarding attorney's fees on March 21, 2018. Therein, Claimants did little more than recite the number of documents exchanged in discovery, provide a total number of hours for the two attorney's time without any breakdown of how that time was spent, and attempt to puff up the difficulty of what it had referred to throughout the arbitration as little more than a "simple contract" case with "one fact to be established" or "one issue in this case."

36. In response, Corrib Biofuels and BHL submitted their opposition to the attorneys' fees request. Therein, Corrib Biofuels and BHL highlighted the lack of any documentation or sworn statement supporting the request.

37. Further, the opposition brief provided a discussion of the factors to be considered when determining the reasonableness of fees. *In re Estate of Freeman*, 34 N.Y.2d 1, 9, 355 N.Y.S.2d 336, 341, 311 N.E.2d 480, 484 (1974) (the following factors are to be considered when determining reasonableness of an attorney's fee request – "time

and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved."

38. Corrib Biofuels and BHL also cited to controlling New York case law, where attorney's fees were denied or delayed because the requesting party failed to provide any documentation to support the request. *JPMorgan Chase Bank, N.A. v. S.I. Wood Furniture Corp.*, 946 N.Y.S.2d 67, 67 (Sup. Ct.) (requiring submission of affidavits and documentation in connection with a fee request*); In re Pet Rack Distribs., Inc.*, 81 Misc. 2d 727, 730, 365 N.Y.S.2d 360, 363 (Cnty. Ct. 1975) (reserving decision on attorney's fees until documentation was submitted to support same); *Filartex Fabrics Co. v. N.Y. Credit Men's Adjustment Bureau, Inc.*, 80 Misc. 2d 665, 668, 364 N.Y.S.2d 687, 691 (Sup. Ct. 1974)(refusing to award attorney's fees at the time because sums requested were "inadequately supported.").

39. It was clear that FCStone Merchant had mad only the most cursory attempt at supporting its outlandish claim of $100,000 in connection with a two day arbitration, involving 4 total witnesses, all of whom gave direct via written statement well in advance of the hearing.

40. The Arbitrator did not issue a decision on Claimants' request for attorney's fees for the Soybean Oil Contract and Guaranty Claim, electing to wait until the issuance of the Final Award before doing so.

The ISDA Guaranty Claim Is Dismissed, And Reinstated

41. In addition, the Arbitrator's Partial Final Award also dismissed the ISDA Guaranty claim because INTL FCStone had failed to provide any updates regarding that claim prior to the close of the hearings for the Soybean Oil and Guaranty portion of the arbitration.

42. On March 12, 2018, INTL FCStone requested that the arbitrator modify the Partial Final Award and reinstate the ISDA Guaranty claim because the New York State Court Action was still pending.

43. In response, BHL argued that the dismissal should stand, as that claim never should have been filed as part of the arbitration in the first place. It did not involve the other Claimant, FCStone Merchant, nor the other Respondent, Corrib Biofuels. It was a dispute between INTL FCStone and BHL only, involved a completely different set of underlying facts, and was completely dependent on the outcome of the New York State Court Action.

44. In addition, BHL highlighted that if INTL FCStone's summary judgment motion in the New York State Court Action was denied, and that matter was to proceed to trial, it could be years before the outcome would be fully decided and adjudicated,

45. BHL also argued that even if INTL FCStone was successful on its second motion for summary judgment, Corrib Oil would be filing an appeal, and it would be months, or possibly longer, before the appeal would be decided.

46. On April 9, 2018, a Decision and Order was issued in the New York State Court Action granting INTL FCStone's motion for summary judgment and dismissing Corrib Oil's counterclaims with prejudice, despite the fact that the parties had only engaged in the most limited discovery and there remained countless genuine issues of material fact.

47. On that same day, Corrib Biofuels and BHL counsel informed the Arbitrator that it would be appealing the New York State Court's order, and once again highlighted that until such time as the appeal had concluded there was nothing to recover under the ISDA Guaranty and requesting that the ISDA Guaranty Claim not be reinstated until such time as the appeal had been decided.

48. On April 24, 2018, the Arbitrator issued prehearing Order No. 9 wherein he ruled that a hearing would be held in connection with the ISDA Guaranty Claim, wherein two points would be argued: (1) Whether Claimants' claim against BHL as guarantor under the Corrib Oil Guaranty should be reinstated; and (2) If so, whether such claim should be granted or denied.

49. On April 27, 2018, Corrib Oil filed a Notice of Appeal with the New York Supreme Court Appellate Division: First Department seeking reversal of the Decision

and Order granting INTL FCStone's motion for summary judgment and dismissing Corrib Oil's counterclaims with prejudice in the New York State Court Action.

50. Corrib Oil is appealing the decision on numerous grounds, including that almost no discovery had been conducted in the matter and there remain genuine issues of material fact as to all of Corrib Oil's counterclaims.

51. That matter is still pending before the Appellate Courts, and oral argument is currently scheduled to be heard during the February 2019 term.

The ISDA Guaranty Claim Arbitration

52. In advance of arbitration hearing on the ISDA Guaranty Claim, the parties made prehearing submissions to the Arbitrator. In its prehearing brief BHL argued that there is no indebtedness covered by the ISDA Guaranty because the New York State Court Action was still pending in the appellate court and no final outcome had been determined and therefore, the stay of the ISDA Guaranty Claim should remain in place, or dismissed.

53. BHL also highlighted the very real potential for inconsistent judgments if the Arbitrator issued a decision on the ISDA Guaranty claim while the appeal was still pending.

54. If INTL FCStone recovers under the ISDA Guaranty Claim, and then Corrib Oil is successful on appeal, apart from INTL FCStone being unjustly enriched as a result, further litigation would be required in order for BHL to retrieve those funds.

55. In addition, BHL's prehearing brief provided the legal test for determining whether to proceed with a claim where the viability of the action was dependent on the outcome of another proceeding.

56. Courts have faced similar situations, where related claims are brought in two separate proceeding and stay the proceeding that could result in an inconsistent decision. For example, in United Steelworkers of America v. Oregon Steel Mills, Inc. 7 322 F.3d 1222, 1227 (10th Cir. 2003) where the viability of the plaintiff's action depended on the outcome of another proceeding, the court set forth the factors to be considered in whether to allow the second proceeding to go forward. Those factors are: (1) whether the movants are likely to prevail in the related proceedings; (2) whether, absent a stay, the movants will suffer irreparable harm; (3) whether the issuance of the stay will cause substantial harm to the other parties to the proceeding; and (4) the public interest at stake. See also, *Rong Chen v. Yeung*, 2011 NY Slip Op 21351, ¶ 5, 33 Misc. 3d 886, 892, 933 N.Y.S.2d 833, 838 (Sup. Ct.)

57. A hearing, lasting little more than two hours, was held on the ISDA Guaranty claim. During which the parties each presented one witness, whose direct testimony was given via written statement submitted long before the hearing.

58. Following the hearing, the parties submitted post-hearing briefs. Therein, BHL once again highlighted the risk of inconsistent judgments, the case law cited above, and the possible requirement of additional litigation if an award was given in

favor of INTL FCStone and then Corrib Oil's appeal granted in the New York State Court Action.

59. Despite there being no discussion of any kind regarding attorney's fees during the hearing for the ISDA Guaranty claim, INTL FCStone made a request for $100,000.00 in attorney's fees in its post-hearing submission without documentation supporting the request, or even providing the Court with the number of hours it spent on the matter.

60. The ISDA Guaranty claim was stayed for over a year, involved a two page contract, almost no discovery, and two witnesses, whose direct testimony was made by written statement well in advance of the hearing.

61. INTL FCStone did not, and has not, provided any documentation (i.e., timesheets and invoices) or sworn statements to support such an outlandish request. Nor has INTL FCStone even stated the number of billing hours it spent in connection with the enforcement of the guaranty.

The Final Award

62. On November 30, 2018, the Arbitrator issued a Final Award in the underlying arbitration. In connection with the Soybean Oil Contract and Guaranty claim, the Arbitrator found Corrib Biofuels and BHL jointly liable to FCStone Merchant for $360,128.50 pursuant to the Soybean Oil Sales Contract and Guaranty, plus interest of $47,848.50, and attorney's fees of $100,000.

63. In connection with the ISDA Guaranty claim, the Arbitrator found BHL liable for "the amount awarded by the New York State Court (i.e., US$3,415,320.38, plus interest of US$861,502.87)," plus $50,000 in attorney's fees.

## BASIS FOR *VACATUR* OF THE AWARD

64. Pursuant to 9 U.S.C. § 10(a), "the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

65. In addition, this Court should set aside the Final Award as it was rendered in manifest disregard of the law.

66. The Final Award has created the real potential that further litigation will be required if Corrib Oil's appeal is granted. This has prevented the parties from receiving a final and definite award on the subject matter.

67. Further, the Arbitrator disregarded controlling law as to two key issues in this matter; (1) not staying his decision on the ISDA Guaranty claim until the New York State Court Action was complete; and (2) the decision to award attorney's fees without any documentation or sworn statement to support the reasonableness of same.

68.     Accordingly, for the foregoing reasons and those set forth in the Memorandum of Law in Support of Petition to Vacate, Petitioners are entitled to an order vacating the Final Award in its entirety.

WHEREFORE, Petitioners hereby respectfully petition this Court for an order pursuant to 9 U.S.C. § 10:

1) Vacating the Final Award; and

2) Granting such other relief as is deemed just and proper.

Dated:   Verona, New Jersey            SALLAH ASTARITA & COX, LLC
         December 27, 2018

                                       *s/ Michael D. Handelsman*
                                       Mark J. Astarita, Esq.
                                       Michael D. Handelsman, Esq.
                                       *Attorneys for Petitioners*
                                       60 Pompton Avenue
                                       Verona, New Jersey 07044
                                       (973) 559-5566
                                       mja@sallahlaw.com
                                       mdh@sallahlaw.com