UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BALLINASMALLA HOLDINGS LIMITED
AND CORRIB OIL BIOFUELS, LLC,

                          Petitioners,                    18-cv-12254 (PKC)

       -against-                             OPINION
                                                         AND ORDER

FCSTONE MERCHANT SERVICES, LLC AND
INTL FCSTONE MARKETS, LLC,

                         Respondents.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

         Petitioners Ballinasmalla Holdings Limited ("BHL") and Corrib Oil Biofuels, LLC ("Corrib Oil") bring this action seeking vacatur of a final arbitration award ("Final Award") issued in favor of respondents for approximately $5 million. (Doc 6; Doc 22.) Respondents FCStone Merchant Services, LLC ("FCSTONE") and INTL FCStone Markets, LLC ("INTL FCSTONE") counter-claim for confirmation of the Final Award and an earlier Partial Final Award. (Doc 18.) The Court has jurisdiction by reason of diversity of citizenship, 28 U.S.C. § 1332,[1] and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. For the reasons explained below, petitioners' motion to vacate is denied and respondents' motion to confirm is granted.

---

[1] BHL is incorporated under the laws of the Republic of Ireland with its principal place of business in the Republic of Ireland. (Am. Pet. ¶2; Doc 22.) Corrib Oil is a New-Jersey limited liability company with a sole member of a New Jersey-limited liability company whose sole member is a company incorporated under the laws of the Republic of Ireland. (Id. ¶1; see Doc 20-1 ¶3.) FCSTONE is a Delaware limited liability company with its sole member a Delaware corporation with a principal place of business in the State of New York. (Am. Pet. ¶3.) INTL FCSTONE is an Iowa limited liability company with its sole member a Delaware corporation with its principal place of business in the State of Missouri. (Id. ¶4.)

BACKGROUND

Corrib Oil is a company that distributes and manufactures oil and petrol products. (Am. Pet. ¶1; Doc 22.) Corrib Oil entered into a contract with FCSTONE to purchase crude degummed soybean oil. (Id. ¶17; see Declaration of Jeffrey D. Rotenberg ("Rotenberg Decl.") Ex. D; Doc 20-4 (Soybean Contract).) BHL agreed to act as a guarantor for Corrib Oil on the contract. (Am Pet. ¶18; see Rotenberg Decl. Ex. G; Doc 20-7 (Soybean Contract Guaranty).) The Soybean Contract Guaranty contains a binding arbitration clause providing that any controversy or claim arising out of or relating to the Guaranty or its breach shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial or other Arbitration Rules. (Rotenberg Decl. Ex. G ¶14; Doc 20-7.) It further specifies that the seat of arbitration shall be New York, New York and that the governing law shall be the substantive law of the State of New York in the United States of America. (Id.)

BHL separately acted as guarantor on payments owed by Corrib Oil Company Ltd. ("Corrib Ltd."), a company not involved in the present litigation, to INTL FCSTONE on swap transactions pursuant to an International Swap Dealers Association ("ISDA") agreement. (Am. Pet. ¶¶9 & n.2, 22−24; see Rotenberg Decl. Ex. E; Doc 20-5 (ISDA Guaranty); Ex. F; Doc 20-6 (ISDA Agreement).) The ISDA Guaranty contains a similar arbitration clause providing that any controversy or claim arising out of or relating to the Guaranty or any alleged breach shall be settled by arbitration administered by the AAA in accordance with its Commercial Arbitration Rules. (Rotenberg Decl. Ex. E ¶14; Doc 20-5.) It further specifies that the seat of arbitration shall be New York, New York. (Id.)

Following a dispute over the quality of certain soybean deliveries and payment on the ISDA agreement, on June 24, 2016, FCSTONE and INTL FCSTONE demanded arbitration

against BHL and Corrib Oil.  (Am. Pet. ¶¶19, 24; Affirmation of Michael D. Handelsman Ex. 1 at 1-2; Doc 7-1 (Notice of Arbitration).)  INTL FCSTONE concurrently filed in New York State court against Corrib Ltd. seeking to collect on the underlying debt from its ISDA Agreement pursuant to the terms of its agreement with Corrib Ltd.  (Am. Pet. ¶¶9, 10, 14; see Rotenberg Decl. Ex. F; Doc 20-6.)

A sole arbitrator, Matthew E. Draper, was duly appointed.  (Rotenberg Decl. Ex. A at 1, ¶31; Doc 20-1.)  In a Pre-Hearing Order, the arbitrator stayed the ISDA Guaranty Claim until the adjudication of the underlying debt owed by Corrib Ltd. in New York State court concluded. (Handelsman Aff. Ex. 4 at 4; Doc 7-4.)  An evidentiary hearing was held in November 2017 in which all parties participated.  (Rotenberg Decl. Ex. A ¶51.)  On March 19, 2018, an arbitrator issued a Partial Final Award ordering Corrib Oil and BHL to pay FCSTONE $360,128.50 due under the Soybean Contract Guaranty within thirty days of the award.  (Id. Ex. A at 20.)  The Partial Final Award also dismissed the ISDA Guaranty claim after "[h]aving received no further submissions on this claim."  (Id. Ex. A ¶103.)

On April 9, 2018, a New York court granted summary judgment in favor of INTL FCSTONE.  Corrib Ltd. appealed.  (Am. Pet. ¶¶13, 46, 49; see Rotenberg Decl. Ex. H, Doc 20-8 (New York State Supreme Court Summary Judgment).)  FCSTONE and INTL FCSTONE asked the arbitrator to reinstate their ISDA Guaranty claim and hold a hearing, and the arbitrator agreed. (Handelsman Aff. Ex. 10; Doc 7-10.)

A second hearing was held in October 2018 in which all parties participated. (Rotenberg Decl. Ex. B ¶7.)  On November 30, 2018, the arbitrator issued his eight-page Final Award finding BHL liable on the ISDA Guaranty and awarding FCSTONE and INTL FCSTONE a total of approximately $5 million, including the amount of the Partial Final Award, which had

not been paid, plus interest and fees with respect to the Partial Final Award, the amount owed under the ISDA Agreement as determined in the New York State summary judgment order, plus interest, fees, and costs. (Am. Pet. ¶¶62−63; see Rotenberg Decl. Ex. B at 7−8; Doc 20-2.)[2]

Petitioners filed their petition to vacate before this Court on or about December 27, 2018 (Doc 6.) Respondents filed their cross-motion to confirm on January 25, 2019 (Doc 18.)

LEGAL STANDARD FOR CONFIRMATION AND VACATUR

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") "governs agreements that are commercial and . . . not entirely between citizens of the United States." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 (2d Cir. 2011) (quotation marks and citation omitted); see CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 73 (2d Cir. 2017) (New York Convention applies where the case "has some . . . reasonable relation with one or more foreign states"). Because BHL and Corrib Oil are foreign parties, the New York Convention applies here. Trina Solar US, Inc. v. JRC-Servs. LLC, 229 F. Supp. 3d 176, 183 (S.D.N.Y. 2017). Because the arbitration was conducted in the United States, (Rotenberg Decl. Ex. A at 20; Ex. B at 8; Docs 20-1, 20-2), "the [Federal Arbitration Act, 9 U.S.C. § 201 et seq. ("FAA")] governs whether to confirm or vacate the arbitration award." Trina, 229 F. Supp. 3d at 183 (citing Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 21 (2d Cir. 1997)); see Glob. Reins. Corp. – U.S. Branch v. Argonaut Ins. Co., 08 cv 8482 (PKC), 2009 WL 1490590, at *1 (S.D.N.Y. May 22, 2009).

The Court "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Grounds for vacatur of arbitration awards are limited, consistent with the purpose of fostering "the twin goals of arbitration, namely, settling

---

[2] The Final Award was modified on January 10, 2019 to fix errors in the recitation of BHL's name. (Rotenberg Decl. Ex. C; Doc 20-3.)

disputes efficiently and avoiding long and expensive litigation." Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 129 (2d Cir. 2003) (quotation marks and citation omitted); see Ukshini v. Comity Realty Corp., 15 cv 6214 (PKC)(KNF), 2018 WL 4625801, at *2 (S.D.N.Y. Sept. 26, 2018).  Relevant here, the FAA permits vacatur of an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  A district court may also vacate an arbitral award that exhibits "manifest disregard" for the law, which considers "whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it" and "whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable."  Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (quotation marks and citation omitted).  The party moving to vacate an arbitration award bears the burden of proof and "the showing required to avoid confirmation is very high." STMicroelecs., N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011) (quotation marks and citation omitted).

DISCUSSION

       I.      BHL and Corrib Oil's Motion to Vacate the Arbitration Award

BHL and Corrib Oil make three arguments for why the Final Award should be vacated: (1) the arbitrator exceeded his powers and did not make a final and definite award because Corrib Oil's pending appeal in New York court may result in a change in the parties' legal obligations; (2) the arbitrator acted in manifest disregard of the law when he did not stay his decision on the ISDA Guaranty claim until the New York action was complete; and (3) the

arbitrator acted in manifest disregard of the law in his award of attorney's fees. (Am. Pet. ¶¶66−67.) The Court addresses each of these arguments in turn.[3]

### A. The Final Award Was Final and Definite

Petitioners contend that the Final Award should be vacated because, by ruling on BHL's liability under the ISDA Guaranty while the New York litigation was on appeal, the award was not final and definite as required by 9 U.S.C. § 10(a)(4). (Pet'rs' Mem. at 20−23; Doc 8.) Petitioners argue that in the event a New York appellate court rules in their favor, further litigation would be necessary related to the arbitration award. This means that the Final Award fails to satisfy the finality requirement that "no further litigation [be] necessary to finalize the obligations of the parties under the award." Puerto Rico Mar. Shipping Auth. v. Star Lines Ltd., 454 F. Supp. 368, 372 (S.D.N.Y. 1978).

The Second Circuit has stated that "an arbitration award, to be final, must resolve all the issues submitted to arbitration, and . . . it must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998); see Schreiber v. Friedman, 15 cv 6861 (CBA)(JO), 2017 WL 5515853, at *3 (E.D.N.Y. Mar. 30, 2017). Generally, "the arbitrators must have decided not only the issue of liability . . . but also the issue of damages." Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980).

---

[3] Petitioners present no argument in either their motion to vacate or their response to the cross-motion to confirm as to why the Partial Final Award should not be confirmed. (See generally Docs 8, 22, 27.) When a petition to confirm is unopposed, courts treat the petition "as akin to a motion for summary judgment." D.H. Blair & Co v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006). Confirmation of an award requires finding only a "barely colorable justification for the outcome reached." Id. at 110 (quotation marks and citation omitted). The Court has reviewed the Partial Final Award and is satisfied based on the thorough reasoning of the arbitrator that confirmation is warranted.

The arbitrator in this case decided the issue of both liability and damages with respect to the ISDA Guaranty claim. (Rotenberg Decl. Ex. B ¶¶15−24, 31−35; Doc 20-2 (issuing an award for $4,328,416.32, the "amount awarded by the New York State Court," plus additional damages for attorney's fees and witness travel costs).) Petitioners do not contest that the liability portion of the award is final or definite. They also do not contest that the damages portion was final and definite at the time it was made, only that there is a possibility in the future that further litigation may be necessary depending on the determination of the New York appellate court. (Pet'rs' Mem. at 22 (describing the issue as one of "potential future litigation").) But such a possibility does not, as petitioners contend, obfuscate the "purpose of arbitration" by "creat[ing] new [disputes]." (Id. (quoting Bell Aerospace Co. Div. of Textron v. Local 516, Int'l, 500 F.2d 921, 924−25 (2d Cir. 1974)).

The Final Award has not created a dispute that did not exist. The underlying debt obligation of Corrib Ltd. that is at issue in the state court litigation was a dispute independent of the Final Award. Further litigation is not necessary to finalize the parties' obligations under the Final Award. See Puerto Rico Mar. Shipping Auth., 454 F. Supp. at 372; see also Rocket Jewelry Box, 157 F.3d at 176 ("[A]n award is final when it resolves the issues presented for arbitration and does not determine other issues beyond its delegated scope of authority, even when those other issues are relevant to the same transaction . . . ."). "[S]peculation that subsequent litigation will be required" is "unpersuasive" to vacate an award under section 10(a)(4) where the arbitrator considers the parties' positions when calculating damages. ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 686 (2d Cir. 1996); see Island Territory of Curacao v. Solitron Devices, Inc., 356 F. Supp. 1, 12 (S.D.N.Y. 1973), aff'd, 489 F.2d 131 (2d Cir. 1973) ("That at

some time in the future another arbitration and another award are *possibilities* does not mean that the present award at the present time is not 'final' and 'definite.'").

The guaranty between BHL and INTL FCSTONE expressly incorporated the governing law of New York. (Rotenberg Decl. Ex. E ¶14; Doc 20-5.)  The arbitrator determined, in accordance with New York law, that the decision of the New York County Supreme Court regarding the amount of monies INTL FCSTONE was entitled to recover from Corrib Ltd. (and consequently Corrib Ltd.'s guarantor BHL) was an existing debt that was binding on the parties. (Rotenberg Decl. Ex. B ¶¶21−23; Doc 20-2.)  Under New York law, a judgment is enforceable and binding upon entry of judgment and while pending appeal. Da Silva v. Musso, 76 N.Y.2d 436, 440 (1990) ("It is elementary that a final judgment or order represents a valid and conclusive adjudication of the parties' substantive rights, unless and until it is overturned on appeal. . . . [R]ights are nonetheless fully enforceable in the absence of a judicially issued stay pending disposition of the appeal."); see Kamden-Ouaffo v. Pepsico, Inc., 14 cv 227 (KMK), 2015 WL 1011816, at *4 n.9 (S.D.N.Y. Mar. 9, 2015) (collecting New York state court cases on the binding, preclusive, enforceable nature of judgments pending appeal).  Petitioners have presented no evidence that Corrib Ltd. filed for an automatic stay in New York court or that any stay was granted.  NY CPLR § 5519(a)(2); see Richard C. Reilly, Practice Commentaries, McKinney's Consol. Laws of N.Y., NY CPLR § 5519:1 (Westlaw 2019) ("If there were no provision for such a stay [pending appeal], a judgment, such as one for money only, could be collected by a victorious plaintiff by use of the enforcement devices of Article 52 notwithstanding that an appellate court might then overturn the judgment and dismiss the plaintiff's action.").

"On its face, the award is mutual, final and definite." ConnTech, 102 F.3d at 689. Respondents do not contend that the arbitrator exceeded the scope of his broad powers to award

"any remedy or relief that [he] deems just and equitable and within the scope of the agreement of the parties" when setting damages for the amount owed as that determined by the New York Supreme Court judgment.  (Rule 47, Commercial Rules of the AAA; see Rotenberg Decl. Ex. E ¶14; Doc 20-5 (providing for arbitration in accordance with the Commercial Rules).)   The award was definite and final for purposes of section 10(a)(4).

### B.   The Arbitrator Did Not Manifestly Disregard the Law Governing Stays

Petitioners similarly contend that the arbitrator acted in manifest disregard of the law by failing to stay the ISDA guaranty claim while the New York State appeal is pending.  A court's ability to vacate an arbitration award based on manifest disregard of the law is severely limited.  Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 208 (2d Cir. 2002).  To vacate an award for manifest disregard of the law, a court must determine (1) that governing law was "well defined, explicit, and clearly applicable," and (2) that the arbitrator "appreciate[d] the existence of a clearly governing legal principle but decided to ignore or pay no attention to it."  Id. at 209 (quotation marks and citation omitted).  The second prong requires a showing of intent, that is, that the arbitrator "willfully flouted the governing law by refusing to apply it."  Id. at 217.

A decision to stay the arbitration is a procedural matter governed under the procedural rules of the arbitration, here, the Commercial Rules of the AAA.  (Rotenberg Decl. Ex. A ¶15; Ex. E ¶14; Docs 20-1, 20-5; see Handelsman Aff. Ex. D ¶14; Doc 7-4 (stating in a Pre-Hearing Order that "a request for a stay of a claim falls within the Arbitrator's powers to adjudicate the parties' disputes under their arbitration agreement (*e.g.*, the Corrib Oil Guaranty provides disputes 'shall be settled by arbitration . . . in accordance with the then current commercial arbitration rules of the [AAA]'), and the [AAA] Rules.").)  Under the Commercial Rules, the arbitrator has the power to "conduct the proceedings with a view to expediting the resolution of

the dispute." Rule 32(b).  In his Final Award, the arbitrator considered BHL's argument on the issue but declined to stay the ISDA Guaranty claim.  (Rotenberg Decl. Ex. B ¶¶21−24; Doc 20-2.)  BHL has made no argument that the arbitrator applied the wrong procedural rules or did so intentionally.

Petitioners also fail to demonstrate manifest disregard of the law under New York or federal law.  The cases cited by petitioners describe the power of a court to stay a proceeding as a discretionary one.  See United Steelworkers of Am. v. Or. Steel Mills, Inc., 322 F.3d 1222, 127 (10th Cir. 2003) (district courts "may choose to stay" cases); Rong Chen v. Yeung, 933 N.Y.S.2d 833, 838 (Sup. Ct. N.Y. Cty. 2011) ("New York courts have discretion to grant a stay . . . .").  The Second Circuit has stated that discretionary doctrines of law, particularly rules of practice, are "far cr[ies] from the well-defined substantive legal principles that constitute clearly applicable governing law" in assessing manifest disregard.  Westerbeke, 304 F.3d at 219.

Petitioners do not contend that the arbitrator ignored or deliberately rejected discretionary factors when considering whether to stay the proceedings.  (Pet'rs' Mem. at 19 (discussing discretionary factors for court to consider).)  Instead, petitioners challenge the ultimate determination not to stay the ISDA Guaranty claim.  (Id. at 20 ("The Arbitrator's insistence on ruling on the ISDA Guaranty Claim while the New York State Court Action was still pending was made in error.").  Manifest disregard "requires more than a mistake of law or a clear error in fact finding."  Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002).  The arbitrator considered BHL's arguments, reviewed the facts and case law, and applied the law to the facts of the case.  (Rotenberg Decl. Ex. B ¶¶21−24; Doc 20-2); see PDV Sweeny, Inc. v. ConocoPhillips Co., 14 cv 5183 (AJN), 2015 WL 5144023, at *10 (S.D.N.Y. Sept. 1, 2015) (no manifest disregard where arbitrators "considered the arguments" and "provide[d] an explanation of why [they]

credited the [r]espondents' version of the law over [p]etitioners'"). The arbitrator did not exhibit a manifest disregard of the law.

### C. The Arbitrator Did Not Manifestly Disregard the Law Governing Attorney's Fees

Finally, petitioners contend that the arbitrator acted in manifest disregard of the law when he awarded attorney's fees on both the Soybean Contract and ISDA Guaranty claims to respondents. According to petitioners, New York law requires an award for attorney's fees be supported by "competent evidence" and requires an arbitrator to consider enumerated factors such as the lawyer's experience, customer fees, and time and labor expended. (Pet'rs' Mem. at 15−18 (first quoting 150 Centreville, LLC v. Lin Assocs. Architects, PC, 39 Misc. 3d 513, 533−34 (Sup. Ct. Queens Cty. 2013), then citing In re Freeman, 34 N.Y.2d 1, 9 (1974)).) Petitioners argue the arbitrator awarded $150,000 in attorney's fees without explanation and without any supporting evidence.

Petitioners have not demonstrated that the arbitrator acted in manifest disregard of the law on attorney's fees. There is no assertion that the arbitrator knew of a governing legal principle and refused to apply it or intentionally ignored it. Schwartz, 665 F.3d at 452; Westerbeke, 304 F.3d at 208. Indeed, in the Partial Final Award, the arbitrator explicitly stated that he required additional briefing from the parties to show that the proposed attorney's fees sought on the Soybean Contract claim were "reasonable" as required by the Guaranty. (Rotenberg Decl. Ex. A ¶¶92, 99; Doc 20-1.) The arbitrator stated the law governing an award of damages, including attorney's fees, again in the Final Award and analyzed damages under this law. (Id. Ex. B ¶¶25−26, 29, 33; Doc 20-2 (stating Rule 47 of the Commercial Rules allows for an award of attorney's fees if "authorized by law or the[ parties'] arbitration agreement" and quoting the arbitration agreement (emphasis added).)

"The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (internal quotation marks and citation omitted). "Only a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award." Id. (internal quotation marks and citation omitted); see STMicroelecs., 648 F.3d at 78 ("Where . . . the arbitrators do not explain the reason for their decision, we will uphold it if we can discern any valid ground for it.").

The arbitrator had evidence of the amount of time of hearings conducted on both claims, the post-hearing briefing schedules, including submission of post-hearing briefs, submission of letters on costs and discovery motions, and a comparison of the amount of time and effort expended for the ISDA Guaranty claim (the second phase of the arbitration) with the first phase of the arbitration. (Rotenberg Decl. Ex. A ¶¶30−52; Ex. B ¶¶2−9, 33; Docs 20-1, 20-2.) The arbitrator also had letters from respondents explaining the amount of time and number of attorneys used to prepare the various stages of the arbitration, the qualifications and skill level of attorneys working on the matter, the technical and scientific nature of the underlying contract claim issues, and the amount of discovery taken. (Supplemental Declaration of Jeffrey D. Rotenberg Exs. 1, 2; Docs 26-1, 26-2.)

From these submissions, there is at least a "barely colorable justification" for the award of $100,000 and $50,000 in attorney's fees in the first and second phases of the arbitration, respectively. D.H. Blair, 462 F.3d at 110. To the extent petitioners further dispute the arbitrator's factual findings on damages, they are beyond this Court's review. Westerbeke, 304 F.3d at 213 ("An arbitrator's factual findings are generally not open to judicial challenge, and we accept the facts as the arbitrator found them." (internal quotation marks omitted).)

## II. Post-Award Statutory Interest, Costs, and Fees Are Warranted

Respondents seek reimbursement for attorney's fees and costs in connection with the proceedings before this Court. Petitioners make no arguments against an award of fees and costs beyond their blanket statement that "for the reasons stated" in their Motion to Vacate and their Reply, the cross-petition to confirm "should be denied in its entirety." (Pet'rs' Reply Mem. at 10; Doc 27.) As the prevailing parties in this dispute, FCSTONE and INTL FCSTONE are entitled to an award of costs, reasonable attorney's fees and other expenses incurred in connection with this action pursuant to their guaranty agreements. (Rule 54(d)(2)(B), Fed. R. Civ. P.; see Rotenberg Decl. Ex. E ¶2; Doc 20-5 (ISDA Guaranty) ("The Guarantor will pay . . . any Indebtedness which the Beneficiary claims under the Guaranty plus all interest, reasonable attorney['s] fees, litigation costs, and other costs of collection, if any, related to such Agreement to be paid by Company for the collection of Indebtedness."); Ex. G ¶2; Doc 20-7 (Soybean Contract Guaranty) (same).)

FCSTONE and INTL FCSTONE also ask for post-judgment interest at the statutory rate. 9 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . ."); see Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100−01 (2d Cir. 2004) (awarding post-judgment interest in an arbitration confirmation); Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Premier Concrete Servs. Inc., 17 cv 6036 (VEC), 2018 WL 487299 at *3 (S.D.N.Y. Jan. 18, 2018) (collecting cases). Because post-judgment interest is imposed by operation of law, there is no need for this Court to act on the request.

- 14 -

CONCLUSION

FCSTONE and INTL FCSTONE's petition to confirm the Final Award and Partial Final Award is GRANTED (Doc 18.)  BHL and Corrib Oil's petition to vacate the Final Award is DENIED (Doc 6.)  The Clerk is directed to terminate the motions.  FCSTONE and INTL FCSTONE are directed to submit a detailed application for the attorney's fees and expenses associated with this action within twenty-one (21) days of the date of this Order and BHL and Corrib Oil may respond fourteen (14) days thereafter.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 11, 2019