UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BALLINASMALLA HOLDINGS LIMITED
and CORRIB OIL BIOFUELS, LLC,

                                      Petitioners,                18-cv-12254 (PKC)

          -against-

                                                                                 OPINION
                                                                                 AND ORDER

FCSTONE MERCHANT SERVICES, LLC
and INTL FCSTONE MARKETS, LLC
(f/k/a INTL HANLEY, LLC),

                                        Respondents.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          This is an application for attorney's fees by the prevailing party in a dueling petition to vacate and cross-petition to confirm an arbitration award. Respondents FCStone Merchant Services, LLC and INTL FCStone Markets, LLC were the prevailing parties. (Opinion and Order of April 11, 2019 (Doc 31).) The fee-shifting provision is in contracts between the parties. Respondents timely filed their motion for attorney's fees and expenses (Doc 33) and petitioners responded, challenging the reasonableness of the fees sought. (Doc 37.) For the reasons explained below, respondents' motion will be granted.

BACKGROUND

          Petitioners Ballinasmalla Holdings Limited ("BHL") and Corrib Oil Biofuels, LLC ("Corrib Oil") commenced the action in this Court seeking to vacate a final arbitration award ("Final Award") issued in favor of respondents. (Doc 6; Doc 22.) Respondents counter-claimed for confirmation of the Final Award and an earlier Partial Final Award. (Doc 18.) The

Court granted respondents' motion to confirm and denied petitioners' motion to vacate. (Doc 31.)

BHL was the guarantor of certain obligations of Corrib Oil in agreements that contain a fee-shifting provision: "The Guarantor will pay immediately and unconditionally on first demand to the Beneficiary any Indebtedness which the Beneficiary claims under this Guaranty plus all interest, reasonable attorneys' fees, litigation costs, and other costs of collection, if any, related to such Agreement to be paid by Company for the collection of Indebtedness." (INTL Hanley, LLC Guaranty Agreement (Doc 20-5) ¶ 2; FCStone Merchant Servs., LLC Guaranty Agreement (Doc 20-7) ¶ 2.)[1] These Agreements are governed by New York law. (Doc 20-5 ¶ 9; Doc 20-7 ¶ 9.) Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987).

Respondents seek $65,215.88 in attorney's fees solely for work in this action and not for the underlying arbitration.[2] (Doc 34 at 4-6.) While the Court has discretion to determine the reasonableness of attorney's fees, "the district court must abide by the procedural requirements for calculating those fees . . . ." Millea v. Metro-North R.R. Co., 658 F.3d 154, 167 (2d Cir. 2011). In a fee-based case, the court determines a reasonable hourly rate and applies it

---

[1] The parties draw no distinction between BHL and Corrib Oil in supporting and opposing the attorney's fee motion. (See Docs 33; 37.) But it appears that only BHL is obligated to pay attorney's fees under the guaranty agreements, as BHL is the "Guarantor."

[2] Although respondents style their motion as one for "Attorney's Fees and Expenses," it appears that no claim is asserted for costs and expenses other than attorney's fees themselves. (See Docs 33; 34.)

to the reasonable number of hours expended on the case that results in the lodestar or "presumptively reasonable fee." Id.

A reasonable hourly rate is not measured by a judge's wistful recollection of how things used to be in bygone years. Rather, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). The relevant rates "are the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (internal quotation marks and citation omitted). The Court should also consider "all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the twelve factors enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989).[3] Arbor Hill, 522 F.3d at 190 (emphasis in original).

DLA Piper LLP (US), the law firm representing respondents, billed respondents at the following rates: Jeffrey D. Rotenberg, a partner with over 18 years of experience, at $976.50 per hour in 2018 and $1,017 per hour in 2019; Marc A. Silverman, an associate with over five years of experience, at $724.50 per hour in 2018 and $783 per hour in 2019; and Carl Matthew Lawrence, a paralegal with over 14 years of experience, at $290 per hour in 2018 and

---

[3] "The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186, n.3 (citing Johnson, 488 F.2d at 717-19).

$305 in 2019.[4] (Jeffrey Rotenberg Decl. of May 2, 2019 (Doc 35) at 1-2; Doc 35, Ex. 2 at 4.) Respondents seek an award at those rates.

In support of the claim that the rates are reasonable in the New York market for relatively complex proceedings to vacate or confirm an arbitration award, respondents have submitted a chart of "top hourly rates" charged by New York City partners and associates at large law firms, such as Kirkland & Ellis LLP and Skadden, Arps, Slate, Meagher & Flom LLP, among others, in 2018. (Doc 35, Ex. 1.) The chart was prepared by Valeo Partners using publicly-available sources. (Doc 35 at 2.) The cited rates include partners at Kirkland & Ellis LLP billing at $1,495, $1,480, $1,160, and $1,095 per hour, at Skadden, Arps, Slate, Meagher & Flom LLP at $1,485 and $1,395 per hour, and at Hogan Lovells LLP at $910 per hour. The rates appear to be taken from publicly-available records in bankruptcy proceedings, and are not specific to enforcement of or challenges to commercial arbitration awards.

Petitioners have responded with a 2018 Legal Trends Report, prepared by CLIO, which reports that the hourly rate for New York City lawyers in 2018 was $368. (Michael Handelsman Affirm. of May 16, 2019 (Doc 38), Ex. 1 at 53.) The Court notes that this figure does not distinguish between partners and associates, and does not shed light on the reputation, skill, or experience of the attorneys surveyed.[5] The CLIO information included categories such as "Small Claims," "Worker's Compensation," "Elder Law," and "Collections." The 90th percentile (i.e., 90% were valued lower) of "Civil Litigation" cases were "value[d]" at $9,976. (Doc 38, Ex. 1 at 62.)[6] The CLIO report may have value for other purposes, but it does not shed

---

[4] The Court notes that respondents did not distinguish between Mr. Lawrence's 2018 and 2019 hourly rates in their memorandum of law or in Mr. Rotenberg's declaration, but billing records reflect this difference. (See Doc 34 at 5; Doc 35 at 2; Doc 35, Ex. 2 at 4.)
[5] The Legal Trends Report states that it "uses aggregated and anonymized data collected from nearly 70,000 legal professionals." (Doc 38, Ex. 1 at 6.)
[6] The Court assumes that this is the "value" of the fees and not the claim.

meaningful light on the reasonable hourly rate in Manhattan for the type of work at issue in this case.

Petitioners also point to cases in this District where courts awarded significantly lower attorney's fees related to an arbitration. See Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Port Parties, Ltd., No. 16 Civ. 4719 (KPF), 2018 WL 722860, at *4 (S.D.N.Y. Feb. 5, 2018) (finding hourly rates of $300 for partners, $225 for associates, and $100 for legal assistants of the firm Virginia & Ambinder, LLP reasonable). But the Carpenters Pension Fund case was an ERISA unfunded liability suit in which the arbitration was conducted pursuant to a collective bargaining agreement where the adverse party did not appear at the arbitration. Id. at *2. Petitioners also rely on Rubenstein v. Advanced Equities, Inc., No. 13 Civ. 1502 (PGG), 2015 WL 585561, at *6-8 (S.D.N.Y. Feb. 10, 2015) (awarding hourly rates of $525 for partners (the rate sought) and a "blended" rate of $350 per hour to associates, and reducing a paralegal's rate from $275 per hour to $140 per hour); (Doc 37 at 5-6). Rubenstein arose out of a securities industry (FINRA) arbitration, and lacked the complexity of this action.

This is not an involuntary fee-shifting application under a statute that awards fees to a prevailing party. The parties to this commercial transaction knew or should have known that they were dealing with a matter of sufficient complexity that if there were litigation of the type presented in this action, it would be reasonable for each side to use attorneys of high skill and reputation. They knew or should have known that the case law interpreting a reasonable hourly rate would incorporate market rates for this type of work. Parties to a contract are free to place a cap on fee-shifting provisions but these parties did not elect to do so. The requested hourly rates will be awarded as reasonable.

Petitioners point to the "drastic difference" between the fees respondents are requesting here and those that respondents requested during the underlying arbitration. Respondents requested a total of $100,000 in attorney's fees for two of the same lawyers—Mr. Rotenberg and Mr. Silverman. (Michael Handelsman Affirm. of Dec. 27, 2018 (Doc 7), Ex. 6 at 2-3.) For 358 hours of combined work, this fee request amounted to $279/hour for each Mr. Rotenberg and Mr. Silverman. (Id. at 3.) At least one court in this District adopted a magistrate judge's denial without prejudice of an attorney's fee application where the hourly rates requested were significantly higher than in another case pending in the court at the same time in which the same lawyers had made a fee application. 1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc., 13 Civ. 2608 (JGK), 2014 WL 840965, at *11 (S.D.N.Y. Mar. 4, 2014) (adopting R. & R. of Freeman, Mag. J.) The submissions in 1199/SEIU raised an issue of candor with the Court that required explanation. Here, the rates charged in the arbitration were for different type of work—appearances before the arbitrator rather than the district court—and the Court sees no issue regarding counsel's candor.

Petitioners also argue that the hours respondents report to have spent on this matter are unreasonable and should be reduced. Respondents state that they expended 99.8 hours on this matter and have submitted partially-redacted time records from client bills, and a composite chart of their time entries, in support. (Doc 35, Exs. 2-5; Doc 34, Ex. A.) First, petitioners contend that respondents include block-billing entries, which are improper in a fee request. Petitioners take particular issue with block-billing entries that include respondents' work on a never-filed sanctions motion that petitioners contend was unnecessary to the cross-motions to vacate or confirm the arbitration award. While "block-billing—the grouping of multiple tasks into a single billing entry—is not per se unreasonable," the Second Circuit has

affirmed reductions of requested attorney's fees where the district court exercised its discretion and concluded that block-billed time entries "frustrated meaningful review of the reasonableness of the claimed hours." Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir. 2015). Where block-billing is used, the Court must be able to "determine the reasonableness of the work performed." Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (Chin, J.) (internal quotation marks and citation omitted).

Although petitioners do not cite caselaw for the proposition that the Court should not award attorney's fees for time spent on the sanctions motion, courts have denied attorney's fees for work on motions that were never filed. Gierlinger, 160 F.3d at 880 (affirming district court's denial of fees for 35 hours spent preparing motions that were never filed); Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc., No. 18-CV-2056 (KMK), 2019 WL 3960099, at *9 (S.D.N.Y. Aug. 22, 2019) (collecting cases). While no sanctions motion was ever filed in this case, respondents did file a pre-motion letter on March 26, 2019, explaining to the Court their legal arguments for sanctions. (Doc 29.) Notably, this letter required much of the same legal research and drafting that would have been required of the motion itself. Petitioners argue that the 36.1 hours spent on the sanctions motion, including block-billing entries that list the sanctions motion in the "description," should be subtracted from the attorney's fee award.

Second, petitioners contend that respondents' attorney's fee award should be reduced by the time Messrs. Rotenberg and Silverman spent on responding to Court-ordered interrogatories to determine jurisdiction. The Guaranty Agreements provide that petitioners will pay "all interest, reasonable attorneys' fees, litigation costs, and other costs of collection, if any, related to such Agreement to be paid by Company for the collection of Indebtedness." (Doc 20-

5 ¶ 2.) Responding to the Court's interrogatories was part of the action that petitioners instituted to vacate the arbitration award. Petitioners further argue that answering these interrogatories did not require the expertise of a partner or seasoned associate but could have been handled by a paralegal.

The Court has considered all the remaining arguments in the parties' submissions, and concludes that the hourly rates requested by respondents are reasonable, i.e., prevailing market rates for complex confirmation and vacatur proceedings governed by the New York Convention, using the services of a law firm of a high reputation operating in Manhattan.

The Court further concludes that the hours expended are reasonable and none of the challenges are worthy of a reduction, given the nature of this litigation.

CONCLUSION

For these reasons, respondents' motion for attorney's fees is GRANTED. The Clerk is directed to enter judgment in favor of respondents against petitioner BHL in the amount of $65,215.88. The Clerk is ordered to terminate the motion (Doc 33.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 19, 2020